IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE RED JR., ) | No. C 04-04408 JW (PR) |
| Petitioner, ) | ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |
| vs. ) | |
| D. L. RUNNELS, Warden ) | |
| Respondent. ) | |

Petitioner, a California state prisoner currently incarcerated at California Medical Facility, Vacaville, filed a <u>pro se</u> Second Amended Petition ("SAP") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court reviewed the SAP and ordered Respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer, along with a supporting memorandum and exhibits. Petitioner has filed a traverse.

**BACKGROUND**

According to the SAP, Petitioner was convicted by a jury in Superior Court for the State of California in and for the County of Santa Clara of three counts of bank robbery and one count of reckless driving in willful and wanton disregard for the safety of others while attempting to elude a pursuing peace officer. Petitioner

1  was sentenced to a term of ninety-five years to life in state prison. The California
2  Court of Appeal modified the judgment, striking two of the five strikes, and
3  otherwise affirmed. The Supreme Court of California denied a petition for review.
4  Petitioner filed a federal habeas petition on October 19, 2004. Upon request of
5  Petitioner, rather than dismiss his petition as "mixed," the Court stayed this action to
6  allow Petitioner to exhaust his unexhausted claim. Thereafter, Petitioner filed an
7  unsuccessful habeas petition in the California Supreme Court. On January 14, 2008,
8  Petitioner returned to federal court and on April 30, 2008, the Court re-opened this
9  action.

10  The California Court of Appeal set forth the following summary of facts:

> Between September 29, 2000 and October 16, 2000, [Petitioner] robbed three banks in Santa Clara County. The stolen cash included "bait" money. [FN 1.] The banks' surveillance cameras photographed [Petitioner] during each robbery.
>
> The first robbery took place on September 29, 2000, at the Bank of America at 1510 The Alameda in San Jose. [Petitioner] entered the bank and showed a note demanding cash to Beverly Williamson, a customer service manager. According to Ms. Willamson the note stated, "this is a robbery . . . no dye pack, no alarms, hand over 100s, 50s, 20s" or "something to that effect." Ms. Williamson testified that she was "upset" by the note and fearful for herself and others. [Petitioner] left the bank with approximately $2500, as well as the note.
>
> After [Petitioner] was arrested, Ms. Williamson positively identified [Petitioner] as the man who robbed her that day. This robbery formed the basis of count four.
>
> On October 10, 2000, [Petitioner] entered the Bank of the West at McKee and White streets in San Jose. He showed teller Omar Gonzalez a note. According to Mr. Gonzalez the note stated, "no bait, no alarm, . . . give me 50s, 20s, 100s." He testified that he was "panicked at first," was afraid, and only gave [Petitioner] the cash because he thought he was in danger. [Petitioner] left the bank with about $3000. He was videotaped by the bank's surveillance camera. This robbery formed the basis of count three.
>
> On October 16, 2000, [Petitioner] entered the Wells Fargo Bank on San Felipe Street in San Jose. He showed teller Christopher Cook a note. According to Mr. Cook the note stated, "20s, 50s, 100s. No dye packs, no problems." Mr. Cook testified that he only gave [Petitioner] the cash from his cash drawer because he was afraid. He believed that he statement "no problems" in the note meant "there would be problems if [he] didn't give him the cash right away." [Petitioner] left the bank with approximately $4000. This robbery formed the basis of count one.
>
> Jeff Enslen of the San Jose Police Department was driving his patrol car on the afternoon of October 16, 2000. [FN 2.] He heard over

the police radio that there had been a bank robbery. He was told to go to the intersection of Tully and Capitol Expressway. Enslen reviewed his book of photographs of bank robbery suspects. As he was waiting to turn left onto Tully Road, he "saw a male driver parked waiting for the light." The driver was wearing a blue coverall shirt, "which was one of the items mentioned in the be-on-the-lookout."

Enslen decided he wanted to "get beind that person and find out if they were the suspect." Enslen pulled behind the car and activated his overhead flshing lights in order to commence a car stop. The driver began to pull over to the side of the road as though preparing to stop. Suddenly, he sped away into the traffic. Enslen activated his siren. As the car sped down the exit ramp on to Cunningham Avenue, it nearly collided with another police car that was assisting with the chase. The car turned into a dead-end street. At the end of the street the driver attempted to make a u-turn by driving over a lawn. He was blocked from so doing by Enslen. The driver was arrested. The vehicle was searched and officers from $4,780 in cash on the front seat of the car. The cash included the "bait" money that matched the Wells Fargo "bait" list. Enslen identified [Petitioner] as the driver of the car.

At the scene of the stop, Mr. Cook made a positive identification of [Petitioner] as the man that had robbed the bank earlier that day.

[Petitioner] admitted that he was the man who entered the three banks with a note that asked for money. He testified, however, that the note said only "100s, 50s and 20s." It did not include language indicating that it was a robbery, or not to include dye packs, or demanding "no problems." According to [Petitioner], knowing that the policy in banks was to hand over the money on demand, he realized he did not need to show any weapon or make overt threats to get money.

[Petitioner] admitted that he tried to flee from the police, but did not see the other officer on Cunningham Avenue. Further, he did not believe he placed anyone in harm's way while trying to escape.

The sole contested issue at trial was whether the element of force or fear was established for purposes of the three robbery charges.

FN 1.  The money had been photographed and contained an electronic tracking device.

FN 2.  At this time he was a patrol officer, patrolling in a marked police car. At the time of [Petitioner's] trial he was a robbery detective.

(Resp. Ex. 6 at 2-4.)

## **DISCUSSION**

A.   Standard of Review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are

binding on the state courts and only those holdings need be "reasonably" applied. Id.

Even if the state court decision was either contrary to or an unreasonable application of clearly established federal law, within the meaning of AEDPA, habeas relief is still only warranted if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 796 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

Lastly, a federal habeas court may grant the writ it if concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1). The standard of review under the AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim. When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. Richter v. Hickman, 521 F.3d 1222, 1229 (9th Cir. 2008).

B.  Timeliness

In his SAP, Petitioner raises two claims for federal habeas relief: (1) ineffective assistance of counsel for (a) failing to challenge the photo line-up and move to suppress eyewitness evidence, (b) advising him to testify at trial, (c) failing to inform Petitioner of the sentence to which he would be exposed; (d) failing to investigate a voluntary intoxication theory of defense, and (e) failing to challenge the felony reckless driving charge; and (2) jury instruction error.

1    Respondent moves to dismiss Petitioner's ineffective assistance claims.
2 Respondent argues that although Petitioner's original petition was timely, only the
3 jury instruction claim was exhausted and Petitioner cannot avail himself of either
4 statutory tolling or the relation-back doctrine. While the Court agrees that statutory
5 tolling is unavailable to Petitioner, see Ferguson v. Palmateer, 321 F.3d 820, 823
6 (9th Cir. 2003), the Court disagrees that all of Petitioner's ineffective assistance of
7 counsel claims do not "relate back" to his original petition.

8    In Mayle v. Felix, 545 U.S. 644 (2005), the Supreme Court discussed the
9 application of the relation-back doctrine under Federal Rule of Civil Procedure 15.
10 As the Supreme Court held, relation back will only be available upon the "existence
11 of a common core of operative facts uniting the original and newly asserted claims."
12 Mayle, 545 U.S. at 659 (internal quotation omitted). "An amended habeas petition .
13 . . does not relate back (and thereby escape AEDPA's one-year time limit) when it
14 asserts a new ground for relief supported by facts that differ in both time and type
15 from those the original pleading set forth." Id. at 649.

16    Here, in the original petition, Petitioner claimed a jury instruction error,
17 ineffective assistance of counsel for advising Petitioner to testify, and ineffective
18 assistance of counsel for failing to develop the evidence to pursue an voluntary
19 intoxication theory. After concluding that Petitioner established good cause for
20 failing to exhaust his ineffective assistance claims prior to filing his federal habeas
21 petition, the Court granted Petitioner a stay under Rhines v. Weber, 544 U.S. 269
22 (2005). When Petitioner returned to federal court, in his SAP, he raised the same
23 jury instruction error, the same ineffective assistance of counsel claims, and added a
24 few new ineffective assistance of counsel claims.

25    In this case, Petitioner has satisfied the dictates of Mayle for two of his
26 ineffective assistance of counsel claims: advising Petitioner to testify and failing to
27 develop the evidence. When Petitioner sought a stay and abeyance, he gave both
28 this Court and the state timely notice of the facts and legal theory he wanted to later

include in his SAP. These operative facts were also included in his original petition. As such, the two ineffective assistance of counsel claims in both the original and the second amended petitions are "tied to a common core of operative facts." Mayle, 545 U.S. at 659. Therefore, the ineffective assistance of counsel claims raised in both his second amended petition and original petition "relate back" to the timely filed original petition under Mayle and are not barred by AEDPA's one-year statute of limitations. Id.

The Court concludes that when a petitioner seeks a stay of proceedings under Rhines to exhaust unexhausted claims already contained in a timely federal petition, the relation back doctrine will not create a statute of limitation problem for the petitioner since the exhausted claim will, by definition, be identical to the claim already raised in the existing petition.[1] Accordingly, those ineffective assistance of counsel claims raised for the first time in Petitioner's SAP, i.e., the failure to disclose Petitioner's sentencing exposure, the failure to challenge the photo line-up and suppress eyewitness testimony, and the failure to challenge the felony reckless driving charge, are untimely and do not relate back to the original petition. See Fed. R. Civ. P. 15(c); Mayle, 545 U.S. at 659. However, Petitioner's claims of ineffective assistance of counsel for advising Petitioner to testify and ineffective assistance of counsel for failing to investigate a voluntary intoxication theory are timely and the Court will address them, as well as the jury instruction claim, on the merits below.

---

[1] In King v. Ryan, 564 F.3d 1133 (9th Cir.), cert. denied, No. 09-5100, 2009 WL 1980821 (U.S. Oct. 5, 2009), the Ninth Circuit discussed the stay-and-abeyance procedure and its limitations in light of Mayle. In comparing the three-step stay-and abeyance procedure outlined in Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003), with the two-step stay and abeyance procedure outlined in Rhines, the Ninth Circuit commented, "the Rhines exception eliminates entirely any limitations issue with regard to the originally unexhausted claims, as the claims remain pending in federal court throughout." King 564 F.3d at 1140. "[T]he Kelly procedure, unlike the Rhines procedure, does nothing to protect a petitioner's unexhausted claims from untimeliness in the interim." Id. at 1141.

C.   Analysis

   1.   Ineffective Assistance for Advising Petitioner to Testify

Petitioner claims that he received ineffective assistance of counsel because counsel incorrectly advised him to testify. Specifically, Petitioner argues that he was put in an awkward position, having to admit to crimes that were not supported by the evidence presented which contributed to the jury finding him guilty of robberies.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. See id. at 697.

Here, Petitioner's theory of defense was that he did not impart force or fear when taking the money from the banks.[2] According to Petitioner, counsel advised him to testify because he "thought it was a logical move to have Petitioner state his

---

[2] To be convicted of robbery under California Penal Code § 211, the jury had to find: (1) person had possession of property of some value; (2) the property was taken from a person or from his or her immediate presence; (3) the property was taken against the will of that person; (4) the taking was accomplished either by force or fear; and (5) the property was taken with the specific intent to permanently deprive that person of the property. See CALJIC 9.40.

actions to the court, in order to lay a defensive ground work."

The California Supreme Court denied this claim without comment. Accordingly, the Court will conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. Richter, 521 F.3d at 1229.

It appears that counsel had Petitioner testify so that he could negate the element of "force of fear" from the crimes of robbery. The theory of defense was that the taking of money was not accomplished by force or fear and, therefore, Petitioner was only guilty of theft rather than robbery.

At trial, Petitioner testified that he was in each bank on the day of each robbery (RT 188) and that he was the person identified in the bank security cameras at the person taking money from the banks (RT 188-89). Petitioner also admitted that he took the money, knowing that the money was not his (RT 221-222); that he wrote notes demanding money from the bank tellers, knowing that banks had a policy of not asking questions when being robbed (RT 189-190, 192); and that he took the money for the purpose of buying more drugs (RT 192). Petitioner testified that he never intended to scare any of the tellers (RT 192-193), and he never used force or threatening gestures (RT 193). The defense theory was to focus the jury on the element of "force or fear," by having Petitioner testify that he did not intend to place anyone in fear, he did not carry a weapon, he did not act in an intimidating way, and he did not do anything to purposely make the tellers feel fearful. (RT 192-196, 260.)

Assuming with deciding that counsel was deficient, the Court concludes that Petitioner has failed to show prejudice. Even without Petitioner's testimony, the jury would have convicted Petitioner of the robberies beyond a reasonable doubt. Williamson and Cook both were certain in their identification of Petitioner as the robber. (RT 50-51, 65-66, 98.) Petitioner was found just after the last robbery with the bait money in his car and a black beanie, identified by one of the witnesses. (RT

145, 159.) And, Petitioner used the same modus operandi in all three robberies: he approached the tellers with a note; the language in all three notes was similar; Petitioner did not speak to any of the tellers; nor did Petitioner brandish any weapon. (RT 52-53, 69, 90, 98.) In addition, all three tellers testified that they were fearful and handed over money because of that fear. (RT 52-53, 69, 91, 93.) Accordingly, even without Petitioner's testimony, the Court finds that there is not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694,

Accordingly, the Court concludes that the state court's decision rejecting this claim was not an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to habeas relief on this claim.

2.  <u>Ineffective Assistance for Failing to Investigate Voluntary Intoxication</u>

Petitioner claims that he received ineffective assistance of counsel because counsel failed to investigate a voluntary intoxication theory for the purpose of showing that Petitioner did not possess the requisite specific intent to commit the robberies. Specifically, Petitioner argues that counsel should have pursued this argument, and should have provided evidence that Petitioner was "under the influence" when he committed the crimes.

A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. See Strickland, 466 U.S. at 691. Strickland directs that "'a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 491). Voluntary intoxication is not an affirmative defense, but in California, it may be considered in deciding whether a defendant possessed the required specific intent. See People v. Saille, 54 Cal. 3d 1103, 1119 (1991).

The California Supreme Court denied this claim without comment.

Accordingly, the Court will conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. Richter, 521 F.3d at 1229.

Here again, Petitioner cannot demonstrate prejudice. If the state's case is weak, the potential prejudicial effect of counsel's performance must be evaluated in light of that fact. Johnson v. Baldwin, 114 F.3d 835, 838 (9th Cir. 1997). Conversely, if the state's case was strong, there is much less likelihood of a reasonable probability that the result of the trial would have been different. See, e.g., Greene v. Henry, 302 F.3d 1067, 1072-74 (9th Cir. 2002). In this case, the prosecution's case was particularly strong, taking into account positive identifications from all three robberies, the same modus operandi, Petitioner getting caught with bait money, and Petitioner's testimony essentially explaining what his thought process was when he was robbing the banks.

The specific intent required to commit robbery is the specific intent to "permanently deprive" a person of property. Cal. Penal Code § 211. Contrary to Petitioner's assertion, the jury did receive evidence that he was "under the influence" at the time he entered each bank (RT 187, 192). Even with that evidence, the manner in which Petitioner approached each teller and deliberately handed them a note demanding money would have belied any attempt at persuading the jury that Petitioner did not specifically intend to take the money away from the bank. Cf. Manta v. Chertoff, 518 F.3d 1134, 1142 (9th Cir. 2008) (noting that intent can be inferred by conduct). Further, Petitioner testified that because he was "under the influence," he knew his decisions were irrational, but he "understood his actions." (RT 215-216.)

In addition, to the extent Petitioner argues that counsel was ineffective for failing to investigate voluntary intoxication as it relates to his felony reckless driving conviction, the Court concludes that Petitioner has not demonstrated any prejudicial effect. The specific intent necessary for a conviction of felony reckless driving is

the specific intent to evade a pursuing peace officer. Cal. Penal Code § 2800.2. Petitioner testified that when he realized that the police was trying to pull him over, he "didn't want to stop" because he had "committed a crime . . . I wanted to get to my connection, get out of there." (RT 203.)

In short, Petitioner conceded that he possessed the requisite specific intent for the robberies and felony reckless driving. Thus any failure to investigate a voluntary intoxication theory did not prejudice Petitioner. Accordingly, the Court concludes that the state court's decision rejecting this claim was not an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to habeas relief on this claim.

### 3. Jury Instruction

Petitioner claims that the jury should have been instructed that it had to find the robbery victims' fear was objectively reasonable. Specifically, Petitioner suggests that the jury instructions should have defined "fear" as having both a subjective and objective standard to sustain the robbery convictions. Petitioner implies that the jury instruction permitted the jury to convict him if it found that the victims' fear was unreasonable.

At trial, the court instructed the jury with California Jury Instruction ("CALJIC") No. 9.40, which described the elements of robbery. It then instructed the jury on the definition of fear in CALJIC No. 9.41:

> The element of fear in the crime of robbery may be either: (1) The fear of an unlawful injury to the person or property of the person robbed, or to any of [his] [her] relatives or family members; or (2) The fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle v. McGuire, 502 U.S. 62, 72 (1991). The instruction may not be judged in artificial isolation, but must be

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.JW\HC.04\Red04408_denyHC.wpd          12

considered in the context of the instructions as a whole and the trial record. See id. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982).

Not every ambiguity or deficiency in a jury instruction will rise to the level of a due process violation. Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per curiam). A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred. See Calderon v. Coleman, 525 U.S. 141, 146 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, see Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), before granting relief in habeas proceedings. See Calderon, 525 U.S. at 146-47.

The state court rejected this claim on direct appeal, reiterating that California case law has long determined that the "fear element of robbery has no technical meaning that must be explained to the jury." (Resp. Ex. 6 at 6.) The state court relied on several state cases and concluded, "We fail to see how a jury can infer that the victim of a robbery was "in fear of harm" or "was in fact afraid" if there is not a "reasonableness" component to that fear." (Id. at 8.) See People v. Cuevas, 89 Cal. App. 4th 689, 698 (2001) ("Actual fear may be inferred from the circumstances, and need not be testified to explicitly"). The state court went on to determine that even if the court had given a modified instruction as Petitioner suggests now, there is no reasonable likelihood that the result would have been different. (Id. at 9.)

Here, the given instructions sufficiently conveyed to the jury that a victim must experience reasonable fear. See United States v. Tirouda, 394 F.3d 683, 689 (9th Cir. 2005) (no error resulting from failure to define "accomplice" in an accomplice instruction because the term expresses a concept within a juror's ordinary experience). Further, each victim testified that they all felt fear or

apprehension due to Petitioner's size and note, which had a threatening component to it although did not contain explicit threats.  In addition, Petitioner even conceded that he was relying on the potential fear of the bank tellers based on his height and size to just hand over the money without question.  (RT 194.)  Altogether, the record makes clear that there was not a reasonable likelihood that the jury applied the instruction in a way that violated the Constitution, see Calderon, 525 U.S. at 146-47, and even if it did, in light of the evidence, any error did not have substantial and injurious effect or influence in determining the jury's verdict, see Brecht, 507 U.S. at 637.

Accordingly, the state court's rejection of this claim was not contrary to, or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).  Petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

DATED: November 19, 2009

JAMES WARE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

GEORGE RED, JR.

        Petitioner,

  v.

D.L. RUNNELS, Warden,

        Respondent.

                                                /

Case Number: CV04-04408 JW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on  11/23/2009  , I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

George Red T-55342
California Medical Facility
P.O. Box 2500
Vacaville, Ca 95696-2500

Dated:  11/23/2009

                                         Richard W. Wieking, Clerk
                                  /s/  By: Elizabeth Garcia, Deputy Clerk